NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 27, 2021
Decided July 16, 2021

**Before**

DIANE S. SYKES, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 20-2876

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee*,<br><br>    *v.*<br><br>ROBERT D. SUTTON,<br>    *Defendant-Appellant*. | Appeal from the United States District Court for the Western District of Wisconsin.<br><br>No. 3:01-cr-00032-bbc-3<br><br>Barbara B. Crabb,<br>*Judge*. |

**O R D E R**

Robert Sutton is serving a 52-year federal sentence for thirteen armed robberies he committed in 1997 and 1998. The sentence includes so-called stacked penalties for three convictions under 18 U.S.C. § 924(c)—one that resulted in a mandatory sentence of five years and two others that resulted in mandatory consecutive sentences of 20 years each. In July 2020 Sutton invoked 18 U.S.C. § 3582(c)(1)(A) and sought a sentencing reduction based not only on the health risks of exposure to COVID-19 within prison, but also on the amendment Congress enacted in the First Step Act of 2018 to limit the circumstances in which multiple sentences for the commission of a firearms offense under § 924(c) can be stacked—imposed to run consecutively to one another. The district court denied Sutton's motion, concluding in part that the discretion in

§ 3582(c)(1)(A) to reduce a sentence upon finding "extraordinary and compelling reasons" does not include the authority to reduce § 924(c) sentences lawfully imposed before the effective date of the First Step Act's anti-stacking amendment. Our recent decision in *United States v. Thacker*, — F.4th — (slip op.) (7th Cir. July 15, 2021), resolved that legal question in the same way as the district court. And as for Sutton's health conditions, the district court appropriately exercised its discretion to deny release on that ground. So we affirm.

## I

### A

In 1997 Sutton joined a group that then robbed 13 businesses in Madison, Wisconsin over the next year. The crew brandished firearms during most robberies, holding victims at gunpoint and demanding money. A 21-count grand jury indictment filed in 2001 named Sutton in seven of the counts—one for bank robbery by intimidation (18 U.S.C. § 2113(a)), three for Hobbs Act robbery (18 U.S.C. § 1951), and three for using a firearm during several of the robberies (18 U.S.C. § 924(c)). A jury convicted Sutton on all counts, and the district court sentenced him to 52 years' imprisonment. This sentence consisted of concurrent 87-month terms for the robbery counts, plus a mandatory consecutive 5-year term for the first § 924(c) count and two mandatory consecutive 20-year terms for the other § 924(c) counts.

We upheld Sutton's sentence on direct appeal. See *United States v. Sutton*, 337 F.3d 792 (7th Cir. 2003). Sutton has since attempted, without success, to obtain relief from his sentence under 28 U.S.C. § 2255.

In July 2020 Sutton invoked § 3582(c)(1)(A) and requested compassionate release. He provided two separate grounds for relief. Sutton first argued that the 45-year sentence for his three § 924(c) convictions is an extraordinary and compelling reason warranting immediate release because, after Congress amended that provision as part of the First Step Act, his convictions would now carry an aggregate mandatory minimum term of only 15 years. He then argued that his medical conditions (diabetes, high blood pressure, and high cholesterol) put him at increased risk of serious complications from COVID-19.

### B

The district court denied Sutton's motion, observing that, to obtain relief, Sutton had to show an "extraordinary and compelling" reason for release under § 3582(c)(1)(A)

and that he did not present a danger to the community under U.S.S.G. § 1B1.13(2). The policy statement in § 1B1.13 states that any reason—other than medical conditions, age, and family circumstances—must be deemed extraordinary and compelling by the Bureau of Prisons but the Bureau here had not made such a finding regarding the First Step Act's amendment to § 924(c).

At the time of its decision, the district court did not have the benefit of our guidance in *United States v. Gunn*, in which we concluded that the policy statement applies only to motions brought by the Bureau of Prisons. See 980 F.3d 1178, 1180 (7th Cir. 2020). While the policy statement may guide a district court's discretion, it does not have binding effect. See *id.*

But the district court's reference to § 1B1.13 is inconsequential because, as part of denying Sutton's motion, the court exercised its discretion independent of the policy statement's instructions. The district court concluded that the change to § 924(c) does not make "extraordinary" the continued enforcement of a legally imposed and still-valid sentence. A contrary conclusion, the district court added, would impermissibly circumvent Congress's choice in the First Step Act to make § 924(c) apply prospectively.

In rejecting Sutton's health-based argument for release, the district court reasoned that release was unnecessary to protect him from COVID-19 because the United States Penitentiary at Allenwood, Pennsylvania, where Sutton is housed, had few cases. The court the underscored that, regardless, it would not release Sutton because it could not conclude that he posed no danger if released.

Sutton now appeals.

## II

In the First Step Act of 2018, Congress amended the sentencing scheme prescribed by 18 U.S.C. § 924(c). Specifically, § 403(a) of the enactment limited the circumstances under which the heightened mandatory minimum sentence applies to second or subsequent convictions under § 924(c). That penalty now applies only if the offender's first § 924(c) violation is final at the time of a second or subsequent violation. Congress also made plain in § 403(b) that the amendment "shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." By its terms, then, the First Step Act's anti-stacking amendment does not apply retroactively.

The district court got it exactly right when it concluded the change to § 924(c) could not constitute an extraordinary and compelling reason warranting a reduction in Sutton's sentence. We held just that in *Thacker*, slip op. at 12 ("At step one, the prisoner must identify an 'extraordinary and compelling' reason warranting a sentence reduction, but that reason cannot include, whether alone or in combination with other factors, consideration of the First Step Act's amendment to § 924(c)."). While Sutton's pre-First Step Act sentence may carry significantly longer mandatory minimums than someone convicted of the same crimes today, the district court may not use the discretion conferred by § 3582(c)(1)(A) to reduce a sentence on that basis. As we said in *Thacker*, "[t]he proper analysis of a motion for a discretionary sentencing reduction under § 3582(c)(1)(A) based on 'extraordinary and compelling' reasons proceeds in two steps." *Id.*, slip op. at 12. The district court may consider the change to § 924(c) when weighing any applicable § 3553(a) factors—but only after it first finds an extraordinary and compelling reason warranting a sentencing reduction.

We close by addressing Sutton's challenge to the district court's denial of his compassionate release motion on the basis that his health conditions placed him at high risk of contracting COVID-19 within USP Allenwood. We see no abuse of discretion. See *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021) ("We review a district court's denial of compassionate release for abuse of discretion.").

While acknowledging Sutton's serious medical conditions and the pandemic, the district court appropriately exercised its broad discretion to deny release. "[C]ourts are not compelled to release every prisoner with extraordinary and compelling health concerns." *Id*. Once it finds an extraordinary or compelling reason for release, the district court must still weigh any applicable § 3553(a) sentencing factors to determine if release is appropriate. See 18 U.S.C. § 3582(c)(1)(A). The district court found that the Bureau of Prisons had implemented protections at the Allenwood facility to reduce the risk of infection. These protections resulted in USP Allenwood recording only two active cases at the time of the court's decision. More fatal to Sutton's appeal, however, is that the district concluded that Sutton continued to pose danger to the community if released, since he was a member of a crew responsible for a string of armed robberies.

For these reasons, we AFFIRM.